BUCKLEY v. STATE.

[94 South. 456. No. 22506.]

WITNESSES. *Questions seeking to have witness identify fleeing murderer whom he saw but could not recognize held proper cross-examination.*

In the cross-examination of witnesses great latitude is allowed, and it is not error for a district attorney to ask a witness on cross-examination the following questions, where the witness saw a fleeing murderer but would not say that he recognized who he was, viz.: "Q. As you sit there now, and as you look back on it, you honestly think you knew the man?" And, "Q. I am not asking you to swear positively as to who it was, but you honestly think you know as you look back over it, but just can't be positive?" And, "Q. But without asking you to be sure, and without asking you to call any name, you honestly think, as you look back over it, that you know who the man was, without being absolutely positive?"

APPEAL from circuit court of Marion county.

HON. G. WOOD MAGEE, Special Judge.

Irvin Buckley was convicted of murder, and he appeals. Affirmed.

*Davis & Langston,* for appellant.

We think that the trial court erred in permitting the district attorney to ask witness Foxworth the following questions over the objection of the defendant, to-wit: 1st. "As you sit there now and as you look back on it you hon-

estly think you knew the man?" 2nd. "I am not asking you to swear positively as to who it was, but you honestly think you know as you look back over it, but just can't be positive?" 3rd. "But without asking you to be sure, and without asking you to. call any name, you honestly think, as you look back over it that you know who the man was, without being absolutely positive? (See page 57 of transcribed notes.)

We do not think that is the fair and proper way to interrogate a witness, and is highly calculated to prejudice the jury and cause them to reach an opinion in the case without having proper evidence for such an opinion. Foxworth had testified that he knew the defendant well and that he got closer to the man seen running through the oat patch than Manton did; that he did not know him and could not recognize him, and that he was doing all he could to find who the guilty party was. That Manton did not tell him then and never did tell him who did the shooting or who he saw running through the oat patch; and that Stuckey told him it was Sid Buckley, and this he knew to be a mistake. In view of all this testimony, and the entire record in the case, we respectfully submit that these questions and the answers they elicited were highly prejudicial to. the defendant. We do not think that the liberty of a man should be taken from him by the use or aid of testimony elicited by such questions. We understand the law to be that you have no right to take the liberty of a man except on positive testimony, or upon circumstances that convince beyond all reasonable doubt. Certainly this kind of testimony does neither, and we believe it to be serious and fatal.

We, therefore, respectfully submit that this cause should be reversed.

*H. Cassedy Holden,* assistant attorney-general, for the state.

The evidence in this case is very clear and convincing and it is difficult to see how the jury could have rendered

any other verdict except a verdict of guilty as charged. Indeed it must be that this appellant escaped the gallows only because of the splendid defense by his counsel.

ETHRIDGE, J., delivered the opinion of the court.

Irvin Buckley, the appellant, was indicted, tried, and convicted for the murder of John Herrington, a human being, and sentenced to life imprisonment in the state penitentiary, from which judgment he appeals.

The testimony for the state shows that Herrington, the deceased, was shot and killed on the 9th day of May, 1921. The party who shot Herrington fired from a stump near a fence inclosing the field in which Herrington was plowing. In the field with Herrington was a man named Stuckey, who testified to seeing the shooting and that Irvin Buckley was the man who did the shooting. After the shooting, the party who fired two shots ran away from the scene of the killing and was recognized by another witness for the state named Manton. It appears from the record that about the 7th of May a brother of Irvin Buckley was shot, and that Herrington had been arrested and placed under a bond for this shooting, and that, the bond being regarded as insufficient, the sheriff of the county was on his way to rearrest Herrington and was in a short distance of the shooting talking to Manton when the shot was fired. The sheriff and Manton ran toward the shooting and each of them saw the fleeing man. He had on an army coat, and Manton, as above stated, claimed to have recognized the appellant as being the man. The sheriff would not say that it was Irvin Buckley, but shortly after the shooting occurred the sheriff went up to where Herrington's body was lying in the company of Manton and reached there about the same time that Stuckey did, and the sheriff asked Stuckey who it was, and Stuckey said it was Sid Buckley, and the sheriff said that he was mistaken, that Sid was over there, and that then Stuckey said it was the big fat Buckley, whereupon Manton stated it was Irvin Buckley. It was also in proof that early in the day in which the killing occurred the appellant had gone to a neighboring

village to buy some merchandise and that at that time he had on an army coat.

The appellant introduced himself, his wife and small daughter, who testified that the appellant was at home at the time of the killing, cutting wood. They also testified that he did not have an army coat and did not wear one on the morning of the killing. Another man and his wife testified that on the evening of the day of the killing they were picking blackberries near Irvin Buckley's place and saw the defendant cutting wood at the time the gun was filed that killed the deceased. However, they placed the time of the shooting at a different hour of the day from the state's witnesses. When the sheriff was on the witness stand being introduced by the defendant, he was asked the following questions, which were objected to and alleged to be prejudicial:

"Q. As you sit there now and as you look back on it, you honestly think you knew the man?"

To which the sheriff declined to say that he thought he knew the man. The second question was:

"Q. I am not asking you to swear positively as to who it was, but you honestly think you know as you look back over it, but just can't be positive?"

To which the sheriff likewise declined to say whether he thought he knew the man or not. Then he was asked:

"Q. But without asking you to be sure, and without asking you to call any name, you honestly think, as you look back over it, that you know who the man was, without being absolutely positive?"

And the sheriff again declined to state that he knew who the man was. It was objected that this is an unfair and improper way to examine a witness. It is also insisted that the evidence is not sufficient to convict. We do not think it was error to ask the sheriff these questions on cross-examination, and his answers thereto did not in any way prejudice the cause of the defendant. We think the evidence is ample to sustain conviction, the appellant being positively identified by two of the witnesses.

The judgment will be affirmed.

*Affirmed.*